Our fifth case for today is United States v. Jamal Lawson, Mr. Collins. May it please the court in this particular matter, I represent the appellant Jamal Lawson, and I believe as set forth in the brief, the facts in the case show in about 2000 or 2009, Mr. Lawson created a company, Evangel Capital, and he specialized in obtaining financing for churches. He had some experience himself as a mortgage broker, soon he introduced himself to other brokers, had discussions with them, he created a website, and before long the pastors were pounding on his door seeking financing. There was a recession in the economy at this particular time, and it was exceedingly difficult for churches to obtain financing. Mr. Lawson generally spoke to the pastors, received papers from them, their bank records, told them that they were approved for financing, and in particular he received an upfront fee from each of these individuals. Did he ever actually finance anything? He never actually financed anything. That's why he wound up indicted. Closing dates were set, they were postponed. But you are not making any arguments about the sufficiency of the evidence of the fraud, right? No, I'm not. Not the sufficiency of the evidence, but I would suggest that there was some mitigating evidence in this case that might go to him. But you don't argue that. All you argue about is the instruction, right? The reference to... The reference and the courts... Don't interrupt me, would you please? Sorry, Your Honor. All you object to, as I understand it, is you object to the fact that the jury was allowed to hear that he didn't pay income tax on his ill-gotten gains. That's all you say in your briefs, right? Right. And so the only question before us is whether... I'm not even sure this is 404B evidence. The government says this is just evidence of one more effort to conceal these ill-gotten revenues. And the district court limits the way this is presented. The district court doesn't let the government say he just didn't file tax returns, period. All they can say is he didn't report these fees to the IRS. And it seems to me, given the relevant standard of 401 and so on, that that's a piece of evidence that suggests he knew there was something illicit about them. So why is that an abuse of discretion for the district court to let that evidence in? Well, we believe this is an abuse of discretion because in the case, in the course of the trial, there's some evidence which goes to his good faith defense. But what you have in this particular situation, once you have this evidence that he clearly failed to do something, that he committed a bad act, it's easy for the jury to infer that if Mr. Lawson intended to defraud the IRS, or in fact he did defraud by not reporting this income, then his intent goes over to the past years. But my point is this is direct evidence of the offense as a whole. You're arguing this as though it's other acts. But if it's not other acts, if it's not under the scope of 404B, then we just have to measure it under 401, ask whether it's likely to advance the ball, essentially. And presumably Rule 403 about the balance of probative and prejudicial force. Judge Zagel applied Rule 403 and found that on balance this was admissible. Now what strikes me is that there is nothing to indicate Judge Zagel's reasoning because he did this at an off-the-record conference. Did you ask that that conference be transcribed? I did ask that that conference be transcribed. I spoke to the court reporter about it. She refreshed my recollection to the fact that it was not transcribed, that this was Judge Zagel's practice to have this early... I asked the question whether you asked that it be transcribed, not whether you asked the court reporter later. At the time, no, I did not. You hold a conference and I gather there was no court reporter present. Did you ask Judge Zagel, please have a court reporter here? You're about to make important rulings. No. Did you ask for that? No. No, okay. The only thing I would say there is my belief that this was preliminary, just going through the early motions and that there might be a more formal statement of the judge's reasoning at a later time. Why would a judge have anything off the record? I don't get it. Indeed, there's a question whether having anything off the record violates the Court Reporter Act, 28 U.S.C. 753. But if you didn't ask, you didn't ask. It's awfully hard to see where we go. So Judge Zagel does, you've appended this to your brief, recount what happened during this off-the-record thing. And he says, I'm not going to allow you to introduce what I just said. And then it looks like Lawson starts to walk out. But anyway, it seems to me that the best you can do at that point is to say, you know, Judge, we need an explanation about why this isn't so prejudicial that it should stay out under 403 or something else. Brief is hardly the word for what's said. It's very hard for us to review something like that, too, since if we can sit around and imagine some reason why somebody might have let it in without any record, why isn't that good enough? Well, I agree, and I certainly, you know, if it's my fault for not asking it on the record at that time, I've had prior trials with Judge Zagel. Generally, we're on the record going through these matters. That's why I was not certain about it at the time. But, you know, and then things a little bit changed in the government, I think, as I recall from the government, what they were offering until the time when actually the agent was on the witness stand. Because that's a sidebar when the agent is on the witness stand that we're arguing and objecting to these matters. And you did object then. Yeah, well, I objected earlier. I filed a motion to eliminate, but Judge Zagel had broken it down to these two parts. First, whether he filed income tax and whether he reported it or not. Reported the funds, okay. Well, I'll reserve the rest of my time here. Okay, that's fine. Mr. McFadden. Good morning, Your Honor. May it please the Court. Chris McFadden on behalf of the United States. The district court in this case properly exercised its discretion to admit the tax evidence. I am very dissatisfied with this business. No explanation was given to the jury what they should do with the information that he didn't pay the income, didn't pay taxes. You say in your brief, by converting the funds and so on and so on, the defendant took step to conceal the income from the IRS and any victims who might have filed civil lawsuits and sought to obtain the returns from the IRS. But that was never told to the jury. So what are you, as a juror, put yourself in the position of a juror. What on earth do you do with this piece of testimony, you know, when the agent was asked? Just a sentence and then the instruction. Well, what I believe the jury would do is follow the limiting instruction that the judge gave to them. Oh, come on. What does the jury do? They're not, they're given this piece of, so it could be dynamite. Yeah, the guy didn't pay the income tax. Judge says it's relevant, didn't pay income tax. But no one tells the jury what's the relevance of it. What are they supposed to know about that? Here's what the record was, Judge. The record was the jury was instructed they could consider this evidence only as it relates to the offenses in the indictment, not for any other offense. In the closing argument, all that was said, it was a one-sentence reference. That's the whole problem. Nothing was said, basically. They're just given this little piece of information, no context. Now, in your brief, you do try to explain what the relevance of this is. But I'm very bothered about sending, giving instructions, allowing testimony, which doesn't give a juror any basis for assimilating this piece of information to the rest of the case. So perhaps more could have been said, but that doesn't mean that there's any type of error in the case, Judge. More could have been said, more than that. One of the central points of our en banc decision in Gomez is that more must be said. I suppose what you can say in response is this case went to trial before Gomez, and apparently the defense didn't ask that more be said. Or at least there's no argument in the defense brief to that effect. Did the defense ask that more be said? No, and there were opportunities to do that. For example, first, the judge made, it's around page 170 of the transcript, that's when he initially said, we just had this off-the-record conference, I'm going to admit it. Then, right before the evidence was admitted, this is around page 470 of the transcript, there's again a discussion of, are we going to do a limited instruction now, or are we going to do it later? The judge says, you don't use this to make a propensity-based argument, which we didn't, but it's relevant to concealment, which we've argued is relevant to fraudulent intent. I think what happened here was actually pretty consistent with Gomez, even though Gomez wasn't decided. The judge didn't decide this in a vacuum before he heard the evidence. He's deciding as it's coming out. Not consistent with Gomez. Not only was there no instruction telling the jury how to use this, there's no explanation on the record for how the Rule 403 inquiry was conducted. We require reasons. There are no reasons. If this case had been tried after Gomez, I should think it would be a summary reversal, but it wasn't. Maybe, Judge. Let me just point out again, Gomez is a 404B case, and as the initial questions came out, we believe it was a direct evidence. Gomez is a 403 case as well as a 404 case, and this was a 403 case at least, whether or not it was a Rule 404B case. In fact, that was one of the points of Gomez to say everything had been swept under this 404B analysis, but actually you needed to work your way through the various rules of evidence. If the U.S. Attorney's Office thinks that Gomez didn't do the things we think it did, you're in for a lot of upcoming reversals. I suggest you reread Gomez and carry it out. And I see that you're looking at Mr. Binney as well as myself on that. What I can say is this was direct evidence of the offense. It was direct evidence because the defendant promised to use this evidence. Well, how about telling the jury that? Judge, what happened in the case, it wasn't obviously the most critical piece of evidence in the case. You should not be giving jurors evidence or including instruction material that is just going to, which I'm sure is your object. Your object is you throw in any piece of garbage you can against the defendant in the hopes that that will have an effect on a juror in case that juror is not intelligent enough to realize that the defendant is absolutely guilty. You'll throw it in, you'll count on harmless error if someone raises a question about it. But I don't see how you can seriously believe that just telling the jury that he didn't pay income tax could do anything but make them think, yeah, this is a bad guy. Yeah, he not only steals from churches, didn't pay his income tax. Maybe some jurors maybe aren't that sympathetic to the churches, not their church, but they care. Perks should pay their income tax at least. I respond to your statement that we throw in any piece of garbage in the hope of confusing the jury. I respectfully disagree with that statement, Judge. We see so many cases in which the government has put in inadmissible evidence or irrelevant evidence knowing that no matter what the impact of that evidence is on the jury, on appeal we're going to say it was a harmless error because no reasonable jury would have acquitted this person. The government is afraid there are unreasonable juries, right? So they'll throw anything they think can survive reversal in. We've seen this repeatedly. And again, I respectfully disagree with you, Judge. When we do trials, I believe we put in relevant evidence that we believe would advance the law. How could you think this evidence could be helpful to a jury without an explanation of how failing to pay income tax on illegal receipts shows that they really are illegal? Because most tax evasion is based on lawful income, right? A lot of people don't want to pay taxes. You don't infer from the fact that he doesn't pay income tax that he doesn't have lawful income, right? I agree with you, Judge. That may be the case in most cases. In page 455 of the transcript, the jury heard that in this particular case, the defendant admitted to the case agent that all of his income was from these advance fees. He had no legitimate income. This was a case where all of his income by his own admission, and the jury heard this, was illegitimate income. So he does not report that to the IRS. But nobody told the jury why his not reporting it was related to his decision to defraud the churches, right? You can defraud the churches and report your income or not report the income. This business about some of his victims might go to the IRS and ask for his tax return, that's pretty speculative, to say the least. And you say the defendant took steps to conceal the income from the IRS. Well, what does that have to do with his... The IRS doesn't care about people defrauding churches. All they care about is that legal and illegal income be reported and taxes paid, right? Yes. In this case, there was evidence of that. But in any event, you made no effort to explain to the jury why this was actually relevant. Judge? And of course, Judge Zagel apparently recognized this is just dirt evidence by, you know, splitting the difference and saying you can't say that he didn't file returns, right? That is a totally arbitrary distinction that the judge made. But he obviously must have felt there was some poison element here and he wanted to diminish it slightly. I believe that he felt that it would be better for the defendant, and he expressly said this, if the jury... Is that what a judge is supposed to do, what's better, what's worse for a party? No, that's not what a judge is supposed to do. It's his way of saying... Supposed to do whether this, you know, he's supposed to apply the 403 standard, right? I believe that was his way of saying that's what he was doing. ...that evidence that he didn't file returns would somehow tip the balance in 403 in favor of... That would make it unduly prejudicial, because you just don't pay taxes. File returns, of course, just zero when it comes to what tax I owe, right? Judge, in this case, the jury heard he had no legitimate income. The jury heard that he failed to report any of that illegitimate income. The district court recognized concealment of this type is evidence of consciousness of guilt and fraudulent intent. The failure to report that income occurred during the same time that the scheme was going on. And it's not a stretch to say... Because the defendant didn't take business deductions, right? He refuted his claim that he had a real business by not reporting the income in a way that would allow the taking of business deductions. Instead, he's revealed that this is just some scam. But that's a very... Not reporting the income meant not taking business deductions, implied knowledge that this was not a real business, was never explained to the jury. Not by the judge, not by the prosecutor. It didn't really surface till your appellate brief. That's the kind of thing that, after Gomez, ought to be explained. I think that it was set out, at least in the motion in limine. The motion in limine doesn't go to the jury. I agree. Look, I'm not disputing that there was only one sentence of a reference in this in the closing statement. I'm not disputing that. Do I believe that the evidence was relevant? Yes. Did the judge believe it was relevant and that it cleared the 403 hurdle as well? He did. You would have a better and a longer record, obviously, if the off-the-record discussion had been on the record. But I think that what you have is enough here to affirm the conviction. No, that's not the critical thing. The critical thing is explaining to the jury the relevance of his not paying taxes. Because the way it was presented to the jury, it could just say, yeah, this is a bad guy. Yeah, he cheated the IRS. He cheated the ____. We don't have to look that closely at the evidence. We've got this extra violation. Judge, I disagree, and here's why. In the closing argument it said you can consider the failure to report this as evidence of fraudulent intent. Then there is the instruction to the jury, the guy is only here on trial for wire fraud. He's not here for tax offenses. Then why are you telling me? Why are you telling us about his income tax? That's what a juror would say to himself or herself, I would think. What's going on? Could it have been spelled out more? He's not being punished, at least in this case, for income tax evasion. Then you tell us he's an income tax evader. What are you supposed to do with that information? He has illegitimate income, which he doesn't report, the admission of it. The reporting of it would have been an admission of the conversion. In other words, he's saying he's going to use it for business. And you never told the jury that? No, Judge, and I'm not disingenuous with you on that. I understand what you're saying. I think it's very bad practice by your office. At the end of the day, we believe the judgment and the conviction in the sentence should be affirmed, and we ask that you do so. Thank you. Thank you. Anything further, Mr. Collins? All right, you were appointed. We appreciate your service, your client support. The court will take the case under advisement.